25 C.C.P.A.(Patents)

**BORCHARDT v. BUKOLT.**
Patent Appeals No. 3913.

Court of Customs and Patent Appeals.
March 7, 1938.

E. Hume Talbert, of Washington, D. C.
(Francis G. Boswell, of Washington, D. C.,
of counsel), for appellant.

Joseph W. Milburn, of Washington, D.
C. (John A. Griesbauer, of Washington, D.
C., of counsel), for appellee.

Before GARRETT, Presiding Judge,
and BLAND, HATFIELD, LENROOT,
and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an interference proceeding in
which the Board of Appeals of the United

States Patent Office affirmed the decision
of the Examiner of Interferences award-
ing priority to the senior party Bukolt
upon the three counts involved. By ap-
peal, the decision of the Board is brought
to us for review.

The interference was declared January
29, 1935, between an application of Bukolt,
serial No. 719,961, filed April 10, 1934, en-
titled "Container Closures," and an applica-
tion of Borchardt, serial No. 731,358, filed
June 19, 1934, entitled "Closures for Con-
tainers."

As indicated by the respective titles, the
subject-matter of the invention is a closure
for containers. It seems to be particularly
adapted to fruit jars. The specification of
Borchardt recites the general object of the
invention to be "to provide a closure in
the form of a clamping and sealing de-
vice that not only provides a leak proof and
air-tight connection but can be easily and
expeditiously applied and removed with re-
spect to the container with very little ef-
fort." The specification of Bukolt con-
tains matter of the same purport.

Count 1, which is illustrative, reads:

"Count 1. An assemblage of the class
described comprising container-closing
means having a yieldable portion to abut
the container, an attaching member hav-
ing means for connecting it with the con-
tainer, and a resilient snap disk coopera-
tively related with said container closing
means and said attaching member and ca-
pable of being snapped from an inactive po-
sition to an active position at which it
forces outwardly against said attaching
member and inwardly against said contain-
er closing means to compress said yieldable
portion of said container closing means
against the container, said snap disk hav-
ing an accessible portion for use in snap-
ping it back to said inactive position to al-
low opening of the container."

The brief on behalf of Bukolt states:

"The demonstrations made by Bukolt at
various times, and referred to in his pre-
liminary statement, turned out to have been
incomplete tests which could not properly
be called a reduction to practice. For re-
duction to practice Bukolt relies upon his
filing date."

██ Upon Borchardt, as the junior party,
rests the burden of showing either an ac-
tual reduction to practice prior to the Bu-
kolt filing date, April 10, 1934, or concep-

tion coupled with requisite diligence beginning just prior to that date.

Borchardt in his preliminary statement claimed conception on or about September 15, 1933; disclosure on or about October 1, 1933; diligence beginning on or about January 1, 1934; reduction to practice on or about January 4, 1934; and written description with first drawings on or about January 9, 1934.

The record discloses that Borchardt was in the employ of the Lullabye Furniture Corporation, located at Stevens Point, Wis., for about thirteen years, during a considerable portion of which time, including the time when the instant controversy arose, he was a foreman in one of the departments; that the company was founded by the father of Bukolt and that Bukolt himself had been with the company for about twenty years at the time of the taking of the testimony, during the latter seven of which he was a director; that the contacts between the parties were frequent and the relations friendly up to and including the time that the original development of a closure cap was undertaken; and that about the middle of January, 1934, Borchardt disclosed to Bukolt a container closure referred to in the record as being of "the set screw type"—a type not here involved.

The work which was done by Borchardt in formulating whatever devices he made was done in the plant of the Lullabye Company, using tools and materials there obtained with Bukolt's knowledge and consent. No question as to shop rights is involved.

It may be said that Bukolt's preliminary statement claimed dates of conception, disclosure, drawings, reduction to practice, and beginning of diligence, ranging, respectively, from January 31, 1934, to February 20, 1934, and it appears to be the claim of Bukolt that Borchardt derived the invention at issue from him. Discussing this point, the Examiner of Interferences said:

"While it is alleged by Bukolt that Borchardt derived the invention from him, Borchardt admits that he did not explain his invention to Bukolt and makes no claim that the latter is not an original inventor. Borchardt is the junior party and there is clearly no evidence which would support a holding that he was diligent between Bukolt's filing date (April 10, 1934) and his own (June 19, 1934). It follows that, even if Bukolt be restricted to his filing date, Borchardt cannot prevail unless he establishes a reduction to practice prior to that time.

"Borchardt's date of conception, therefore, is immaterial and it is not necessary to pass on the pertinence or authenticity of the sketch (exhibit 2) which is relied on as establishing conception. In accordance with the request of counsel for Borchardt, however, it is stated on the record that the portion of the sealed end of the envelope in which this sketch was contained, which is not covered by the seal shows no signs of having been opened and resealed and that is is not thought possible that the sketch could have been inserted through this portion."

In its decision, the Board, referring to the sketch so alluded to, says:

"This sketch, dated January 9, 1934, discloses a closure for a jar in which is placed a wax paper, a top plate on top of the mouth of the jar, a jar cover with an opening in the center and a member D designated a spring catch plate. It is this member which, it is urged, is a resilient snap disk such as defined in the counts. We fail to find such member a snap disk as it is not clear from Exhibit 2 that it can be bent or deflected from a flat plane surface to a position on opposite sides therefrom as illustrated in the application drawing and there is no description of the disk. We do not consider this a disclosure of the invention in issue."

We concur in this conclusion of the Board, and, under this view, find it unnecessary further to consider the sketch.

With the sketch eliminated, the record contains no proof as to conception apart from what is shown in certain devices, alleged tests of which are claimed for actual reduction to practice.

One of these devices, Exhibit 4, Borchardt claims was made by him January 4, 1934, and another, Exhibit 7, January 25, 1934, and it is pointed out that these dates were prior to Bukolt's alleged conception date of January 31, 1934.

We deduce from the argument on Borchardt's behalf that his theory is that even if it be held that the tests and demonstrations he claims to have made fail to establish reduction to practice, the devices themselves disclose conception of the invention, and the insistence is that certain acts either show diligence during the requisite pe-

riod or show that his financial situation was such as to excuse whatever lack of diligence appears.

As we view the matter, the difficulty respecting this theory is that the record does not disclose conception with any greater clearness than it does reduction to practice.

It appears from the record that, in the early part of February, 1934, Borchardt was demoted from the position of foreman in the Lullabye Company plant and assigned to "bench work," his wages being materially reduced, and that he was discharged from any service with the company about May 1, 1934. The brief on his behalf contains certain argument based upon these incidents, but we fail to discern how it bears upon the issue which must be determined. The justice or injustice of his demotion and final discharge cannot affect the questions of fact here material. If conception were shown even without reduction to practice, the financial situation of the party might be considered in connection with the question of diligence, but that matter cannot be reached until conception at least is satisfactorily established. . This, it must be held, Borchardt failed to do.

There is no corroboration of his statement that either of the exhibits was made on the dates mentioned. A fellow workman of his by the name of Dzwonkowski, who seems to have agreed to aid Borchardt financially in making his patent application, stated that he first saw the latter's completed caps just shortly before they were sent to the patent attorneys in Washington for use in preparing the application. This appears to have been at a date in April, 1934, later than Bukolt's filing date. Another fellow workman testified, but his testimony does not show that he saw the devices named. Indeed, Borchardt does not claim to have shown them to any person in the shop.

The testimony of Borchardt as to the test made by him of Exhibit 4 is, in substance, that it was made, in the presence of his wife and her grandfather, by placing liquid in a jar to which the cap was applied and inverting it, and that it stood thus for some time without leaking. Although shown to be available, neither his wife nor the grandfather were called as witnesses.

His testimony with respect to his disclosure to witnesses of Exhibit No. 7 (seemingly along with another device not here involved) is that on January 27, 1934, he demonstrated and explained it to certain parties in two taverns and that it operated successfully. It is conceded that no liquid was used in these demonstrations.

We have examined carefully the testimony of those persons in whose presence the demonstrations were stated to have been made. It was given more than a year and a half after the date of the tests and was based wholly upon recollection, there being no documentary evidence concerning either the date or the tests. We agree with the tribunals of the Patent Office that the evidence is not sufficiently clear satisfactorily to identify the particular type of cap or closure displayed, and we further agree that in the absence of use of a liquid it cannot properly be held that the tests constituted reduction to practice of the invention.

The pertinent evidence was reviewed with sufficient fullness by both tribunals of the Patent Office, and no good purpose would be served by repeating such review here. The question presented is one of fact and the tribunals concurred upon the question.

We are not convinced of error, and the decision of the Board of Appeals is affirmed.

Affirmed.